WESTERN UNION TELEGRAPH CO. *v.* FELLNER.

Opinion delivered June 17, 1893.

*Telegraph company—Failure to deliver message—Damages.*

> Failure of a telegraph company to deliver a message, whereby a purchase of property in the market was not consummated, will not entitle the sender to recover more than nominal damages, though the property advanced in value before the delay was discovered, if no purchase was subsequently made, and there is no evidence that, if it had been made, the property so purchased would have been sold at a profit.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

*Clendening, Mechem & Youmans* for appellant.

Before a recovery can be had for more than nominal damages an actual and substantial loss suffered must be shown. 44 Ark. 439. No loss is shown beyond the price of the telegram. There is no proof that he would have sold on the 31st of August. The general rule is that anticipated profits cannot be recovered. In 7 Hill, 61, *there was a contract* to deliver, and plaintiff was allowed to recover the difference it would have cost him to perform the contract and the price he was to receive. Profits upon a contract never made are too remote and uncertain to be taken into consideration. See 83 Ky. 104; 55 Pa. St. 256; 98 Mass. 232; 1 Col. 230; 33 Wis. 558; 124 U. S. 444; 100 N. C. 300; 48 Fed. Rep. 310.

*Rogers & Read* for appellee. *B. H. Tabor* of counsel.

Appellant's contention is that, to enable plaintiff to recover, it must be made to appear that he did actually make a purchase of the bonds at a loss, and that the measure of damage is the difference between the price on

the day they would have been bought had the message been delivered, and the price on the day he might have first purchased them, after learning the message had not been delivered, and cite 1 Col. 230; 33 Wis. 558; 124 U. S. 453; 48 Fed. Rep. 810. Of these the only one that supports appellant's contention is the latter case. In this case the damages which follow the breach were fixed by a definite and certain rule, the daily quotations of stock exchange. The stock steadily advanced to the day of suit. The purchase to be made constituted the only inducement and entered directly into the contract with the defendant company, and the damages claimed constituted the direct, proximate and inevitable result of the breach. See 44 N. Y. 264; 7 Hill, 60; 53 Ark. 434; 48 *id.* 502; 5 So. Rep. 397; 21 Pac. Rep. 339; 4 N. Y. Sup. Ct. 666; 49 N. W. Rep. 88; 16 S. W. Rep. 1095; 26 N. E. Rep. 534; 19 S. W. Rep. 336, and many others cited in the opinion of the circuit judge. The company is liable for its failure to deliver. 53 Ark. 434; Allen's Tel. Cases, note p. 455. The message disclosed on its face its purpose. 19 Am. St. Rep. 55; 10 *id.* 699 and note p. 785. The loss of a purchase was a proximate result of defendant's breach of contract, and is capable of certain admeasurement. 9 Exch. 341; 7 Hill, 61; 16 N. Y. 489; 9 Am. Rep. note p. 149; 10 *id.* note p. 782; 1 Am. L. Reg. 685; Allen's Tel. Cases, 61–63; 13 Cal. 422; 1 Daly, 575; 32 Barb. 530; 75 Ga. 785; 37 Iowa, 214; 115 Ind. 191; 18 Ill. App. 56; 52 Ind. 1. 21 Pac. Rep. 339; 58 Tex. 170; 64 Wis. 644; 98 Mass. 232; 60 Me. 7; 55 Penn. 262; 44 N. Y. 263.

HUGHES, J. This is an appeal from a judgment for damages against the Telegraph Company, for failure to deliver a message sent by the appellee, Fellner, over its line. There is a cross-appeal by Fellner.

The case was tried by the court without a jury, and the court made the following findings of facts and declarations of law :

"That on the night of August 26, 1891, plaintiff delivered to defendant, in Fort Smith, Ark., the following message: 'Henry Clews & Co., Broad St., N. Y. Buy me 100 Burlington & Quincy common stock, and 10,000 Sante Fe incomes. Wire price. S. FELLNER.' That said message was an order to buy for plaintiff 100 shares C. B. & Q. Ry. common stock and 10,000 A. T. & S. F. income bonds. That defendant received said message, and for 75 cents paid by plaintiff agreed to transmit it to Henry Clews & Co., which it negligently failed to do. That plaintiff inquired frequently at defendant's office for answer to his message and, receiving none, on Saturday, August 29, 1891, telegraphed Henry Clews & Co., asking if they had filled his order, to which they replied by telegram that they had not; that, at the time of the receipt of this message, it was too late in the afternoon of Saturday for plaintiff to place his order before Monday, August 31, 1891 ; that plaintiff made no purchase of the stocks and bonds; that Henry Clews & Co. never received the message delivered by plaintiff to defendant on August 26, 1891; that said Henry Clews & Co. had in their hands $2000 belonging to plaintiff, and they had agreed with plaintiff to advance money and buy for plaintiff stocks or bonds or both whenever so ordered by him, charging him 6 per cent. per annum on all sums advanced, they holding the $2000 to secure the same and prevent loss to themselves ; and that if they had received the night message of August 26, 1891, they would on the following day have purchased for the plaintiff the property mentioned therein. That on Monday, August 31, 1891, the price on exchange at New York of the 100 C. B. & Q. had advanced $550 over its price on August 27,

1891, and that the same has continued steadily to advance in price to the present time. That the 10,000 Sante Fe income bonds had advanced on August 31, $312 over their price of August 27, 1891, but on September 1, 1891, they depreciated and could have been had at the same price that they had sold for on August 27. From September 1, however, they had steadily increased in value to the present time. The premises considered, the court declares the law to be that, by defendant's negligence in not transmitting plaintiff's telegram, plaintiff has sustained proximate and certain damages in the sum of $550 from his loss of a purchase of the Burlington & Quincy stock, but plaintiff has not sustained any certain damage from his loss of a purchase of the Sante Fe incomes. Wherefore the court finds the issues for plaintiff and assesses his damage at $550. It is therefore by the court considered, ordered and adjudged that plaintiff, Samuel Fellner, do have and recover of and from the defendant, Western Union Telegraph Company, the sum of $550, together with his costs here laid out and expended."

Is the appellee entitled to more than nominal damages?

The case of the *Western Union Telegraph Company* v. *Hall*, 124 U. S. 444 is very much but not exactly like this one. In that case the plaintiff delivered to the Telegraph Company for transmission, the following message: "11—9—1882. To Chas. T. Hall, Exchange, Oil City, Pa. Buy ten thousand if you think it safe. Wire me. GEO. F. HALL." (Meaning ten thousand barrels of oil.) Through the negligence of the employes of the company the message was forwarded to Oil City without the name of the party to whom it was addressed, and the operator at Oil City had to telegraph back for the name, so that the message, which reached Oil City at 11 o'clock a. m. and would have been delivered to

Chas. T. Hall at 11:30 a. m. had it been properly sent, was not delivered till 6 o'clock p. m. of the day it was sent, before which hour the exchange had closed, in consequence of which the oil could not be purchased that day. At the opening of the exchange on the next day, the price of the oil had advanced. Had the dispatch been properly sent and promptly delivered, Chas. T. Hall would have bought by 12 o'clock m., on the 9th of the month, the oil he was directed to buy for plaintiff at $1.17 per barrel, but by the next day the market price of oil had advanced to $1.35 per barrel, at which price Chas. T. Hall, not deeming it advisable, did not purchase. It was not shown by the evidence whether the price of petroleum advanced or declined after the 9th of November. Here is the difference between that case and the one at bar. In this case the evidence is that the 100 C. B. & Q. had advanced $550 by August 31 over the market price on August the 27th, and that the same had continued steadily to advance in price to the time of the trial of the cause.

In the case of *Western Union Telegraph Company* v. *Hall*, above stated, Mr. Justice Matthews, speaking for the Supreme Court of the United States, said : "It is clear that in point of fact the plaintiff has not suffered any loss. No transaction was in fact made, and there being neither a purchase nor a sale, there was no actual difference between the sums paid and the sums received in consequence of it, which could be set down in a profit and loss account. All that can be said to have been lost was the opportunity of buying on November 9, and of making a profit by selling on the 10th, the sale on that day being purely contingent, without anything in the case to show that it was even probable or intended, much less that it would certainly have taken place. It has been well settled since the decision in *Masterton* v. *The Mayor of Brooklyn*, 7 Hill, 61, that a plaintiff may

rightfully recover a loss of profits as a part of the damages for breach of a special contract, but in such a case the profits to be recovered must be such as would have accrued and grown out of the contract itself, as the direct and immediate result of its fulfillment. In the language of the Supreme Judicial Court of Massachusetts in *Fox* v. *Harding*, 7 Cush. 516, these are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into. But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into and in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit. * * * The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, they must be such as might naturally be expected to follow its violation ; and they must be certain, both in their nature and in respect to the cause from which they proceed. The familiar rules on this subject are all subordinate to these. For instance, that the damages must flow directly and naturally from the breach of the contract, is a mere mode of expressing the first ; and that they must be not the remote but proximate consequence of such breach, and must not be speculative or contingent, are different modifications of the last.''

In the case at bar there was no contract entered into, on the appellee's behalf, for the purchase of the stocks and bonds ; there is no evidence that had the stocks and bonds been bought for plaintiff on the 27th of August, they would have been sold at a profit at any time at all, though the evidence shows that it might have been done at any time before this suit was brought. If

the appellee had bought, and had held the bonds till after the suit was brought, and there is no evidence that he would have done so, it cannot be found from the evidence that he could afterwards, or that he would, have sold for a profit, as we cannot presume that they continued to advance, or held the advance over August 31 afterwards.

We are of the opinion that the damages in this case are too remote, speculative and contingent to warrant a recovery.

The judgment of the circuit court as to the Santa Fe incomes is affirmed ; as to the Burlington & Quincy common stock it is reversed as to the $550 damages in favor of appellee, and the cause is remanded for further proceedings.